UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

FATHI MUSHAPHA CULLEN ,

                    Plaintiff,                          Case No. 1:24-cv-48

v.                                                      Honorable Phillip J. Green

JOHN WALL, et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.
The Court has granted Plaintiff leave to proceed *in forma pauperis*.  (ECF No. 4,
PageID.56–57.)  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of
Civil Procedure, Plaintiff consented to proceed in all matters in this action under the
jurisdiction of a United States Magistrate Judge.  (ECF No. 1, PageID.12; ECF No. 7,
PageID.74.)

This case is presently before the Court for preliminary review under the Prison
Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant
to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is
required to conduct this initial review prior to the service of the complaint.  *See In re
Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v.
Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the

named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that

"[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Klinger, Hellman, Wall, Crace, and Spencer.  The Court will also dismiss Plaintiff's RLUIPA claims against Defendants Stephenson and Smith because Plaintiff is not seeking declaratory or injunctive relief.  The Court will serve the complaint against remaining Defendants Stephenson and Smith with respect to Plaintiff's First Amendment claims.

**Discussion**

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Charles Egeler Reception & Guidance Center (RGC) in Jackson, Jackson County, Michigan.  The events about which he complains, however, occurred at the Muskegon County Jail (MCJ) in Muskegon, Muskegon County, Michigan.  In his amended complaint, Plaintiff sues Defendants Sergeant John Wall; Deputies John Hellman, John Crace, Jane Klinger, and John Spencer; Lieutenant/Jail Administrator John Stephenson; and Captain John Smith.

In Plaintiff's amended complaint, he alleges that he was observing Ramadan during the pertinent time in March of 2023.  (ECF No. 7, PageID.69.)  Plaintiff asserts that on March 26, 2023, he was supposed to have received his Ramadan Iftar, or evening, meal bag at the same time as the other observant inmates.  Instead, Plaintiff did not receive any evening meal on March 26, 2023, and went without food from 4:00 a.m. on March 26, 2023, until approximately 4:00 a.m. on March 27, 2023.  Plaintiff states that Defendants Klinger and Hellman were both floor deputies on these dates.

Plaintiff states that it is well-known that he is a practicing Muslim and has participated in Ramadan since his initial incarceration at MCJ. (*Id.*)

Plaintiff states that in order to receive his morning meal on March 27, 2023, he had to hold his food slot hostage, but that the other inmates who were participating in Ramadan were given their meals as a matter of course. When Plaintiff spoke to Defendant Wall about the matter, Defendant Wall asked Plaintiff if he had requested a meal. Plaintiff stated that he did not know he had to request the meal and asked why this was not the case for the other inmates. Defendant Wall told Plaintiff that he was unaware that Plaintiff was doing Ramadan, as were both Klinger and Hellman, and that he would make sure that it did not happen again. (*Id.*) Plaintiff also alleges that both Klinger and Hellman subsequently apologized for not providing Plaintiff with the evening meal bag and told Plaintiff that they were unaware of his participation in Ramadan. (*Id.*, PageID.71.)

Plaintiff alleges that on March 29, 2023, Defendants Crace and Spencer failed to give him his evening meal when other inmates who were doing Ramadan received their evening meals despite the fact that Plaintiff claims his name was on the list. Plaintiff states that he had hit his call button to inform the Defendants but received no reply. Plaintiff was forced to wait until 4:00 a.m. the following morning to receive any food. (*Id.*, PageID.70–71.)

Plaintiff states that he was forced to take his food slot hostage on the morning of March 30, 2023, in order to be allowed to speak to the shift command. Plaintiff spoke to Defendant Wall, who again apologized and told Plaintiff that steps had been

taken to ensure that it did not happen again.  Plaintiff states that Defendants Spencer and Crace also apologized for the error and told him that they had posted flyers in the control bubble and outside the Pod door instructing staff to make sure that Plaintiff received his Ramadan meal.  (*Id.*, PageID.70-71.)

Plaintiff reports that he started his Ramadan fast one and one-half days late.[2] (*Id.*, PageID.70.)  Plaintiff states that Ramadan is meant to be observed for a 30-day period, but if days are missed—for example, if the participant ate or drank during daylight hours—the missed fast days can be "made up" later.[3]  (*Id.*)  Plaintiff alleges that he was supposed to "make-up" the missed days later, with a deadline of October 15, 2023. (*Id.*).[4] (*Id.*)  Plaintiff states that he had informed deputies a week in advance, and everything was in place.  (*Id.*)

When the day arrived, Deputy Shubert (not a defendant) brought Plaintiff a meal after dinner and told him that Defendants Stephenson and Smith had said that Plaintiff could not do make-up Ramadan because the next double fast was not until

---

[2] Plaintiff does not explain why he started his fast late. He does not attribute the delay to any of the Defendants. It is certainly possible that Plaintiff's late start contributed to the confusion as to whether he was entitled to Ramadan evening meal bags on March 26 and March 29.

[3] Federal courts have recognized the ability of Ramadan observers to make-up fast days that are missed. *See, e.g.*, *Small v. Wetzel*, 528 F. App'x 202, 205–06 (3rd Cir. 2013); *Gordon v. Combs*, No. 7:16cv00285, 2017 WL 4248524, at *1, 4 (W.D. Va. Sept. 25, 2017); *Omaro v. O'Connell*, No. 6:14-CV-06209 (MAT), 2016 WL 8668508, at *2 (W.D.N.Y. Nov. 4, 2016).

[4] Plaintiff does not specifically state that the October 15, 2023, deadline was a requirement of his religious practice. Indeed, federal courts have recognized that the deadline for completing the make-up fast days is the beginning of the next Ramadan observance. *See, e.g.*, *Small*, 528 F. App'x at 205–06; *Omaro*, 2016 WL 8668508, at *9.

2030.[5]  (*Id.*)  Plaintiff explained that he was not doing a double fast, but an allowable make-up fast.  Deputy Shubert told him that Defendants Stephenson and Smith had said they did not want to deal with the "hassle."  (*Id.*)  Deputy Shubert gave Plaintiff a normal work release meal bag and left.  Plaintiff then wrote grievances regarding the matter.  (*Id.*)

Plaintiff claims that Defendants' interference with his fasting for Ramadan violated his First Amendment right to freely exercise his religious beliefs, RLUIPA, and his Fourteenth Amendment right to equal protection.  Plaintiff seeks damages and whatever additional relief the Court may deem just and proper.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of

---

[5] The time for observing Ramadan is based upon the Islamic lunar calendar. *See, e.g.*, Yassmin Abdel-Magied, *How Do We Know When Ramadan Starts and Ends? It's Up to the Moon*, National Geographic, Apr. 5, 2024, https://www.nationalgeographic.com/history/article/ramadan-sighting-of-the-moon (last visited Apr. 25, 2024). Because the lunar year is shorter than the Gregorian solar year, it is possible that Ramadan might be observed twice within the same solar year. *Id.* For example, in 2030, Ramadan is expected to start early in January and then again at the end of December. Al Jazeera, *Ramadan 2024: Fasting Hours and Iftar Times Around the World*, Mar. 7, 2024, https://www.aljazeera.com/news/2024/3/7/ramadan-2024-fasting-hours-and-iftar-times-around-the-world (last visited Apr. 25, 2024).

action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

8

### A.      First Amendment Freedom of Religion and RLUIPA

Plaintiff asserts that Defendants violated his First Amendment right to practice his religious beliefs and his rights under RLUIPA when they interfered with his ability to participate in Ramadan.  The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).  Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right.  *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

The Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), provides that "[n]o government shall impose a substantial

burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.*; *see also Haight v. Thompson*, 763 F.3d 554, 559-60 (6th Cir. 2014).

RLUIPA creates a burden-shifting framework for assessing prisoner claims. A prisoner bears the initial burden to show (1) his desired religious exercise is motivated by a "sincerely held religious belief" and (2) the government is substantially burdening that religious exercise. *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019); *see also Ackerman v. Washington*, 16 F.4th 170, 179 (6th Cir. 2021) (citation omitted). "If the prisoner successfully shows the state substantially burdens a sincere religious belief, the burden shifts to the government to justify the burden on the religious adherent under the 'daunting compelling interest and least-restrictive-means test,' with a slight twist." *Ackerman*, 16 F.4th at 179 (quoting *Cavin*, 927 F.3d at 458). Courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

Plaintiff has sufficiently alleged his sincerely held religious beliefs and there is no doubt that participation in Ramadan is a religious practice. The next consideration is "whether the challenged practice of the prison officials infringes on

10

the religious belief. . . ." *Kent*, 821 F.2d at 1224–25.  As is also true with RLUIPA, a practice will not be considered to infringe on a prisoner's free exercise unless it "places[s] a substantial burden on the observation of a central religious belief or practice. . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989); *see also Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015) (McKeague, J., dissenting) ("To violate the First Amendment, the diet must impose a substantial burden on the inmate's exercise of religion.").

"[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*, 258 F. App'x 729, 734 (6th Cir. 2007).  "[A] 'substantial burden' is a difficult threshold to cross."  *Id.* at 736.  "'[A] 'substantial burden' must place more than an inconvenience on religious exercise.'"  *Id.* at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004)).  A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult. . . ." *Id.*

### 1.   March 26, 2023, Denial of Evening Meal Bag

### a.   Defendants Klinger and Hellman

Plaintiff first complains of an incident that occurred on the evening of March 26, 2023.  As noted above, Plaintiff claims that Defendants Klinger and Hellman were working on the floor at the time and are responsible for the fact that he did not receive his evening meal.  The Court notes that:

> A restrictive diet that "substantially diminish[es an inmate's] qualitative spiritual experience" during Ramadan can be a substantial burden in the First Amendment context. *Makin v. Colorado Dep't of*

11

> *Corr.,* 183 F.3d 1205, 1212 (10th Cir.1999). The temptation to break the
> Ramadan fast due to hunger and discomfort caused by a nutritionally
> inadequate diet may substantially burden an inmate's right to free
> exercise of religion. *Couch v. Jabe,* 479 F.Supp.2d 569, 589 (W.D. Va.
> 2006).

*Welch v. Spaulding*, 627 F. App'x 479, 483 fn. 2 (6th Cir. 2015).  At issue in *Welch*,
however, was the caloric content of the Ramadan meals that were provided over the
entirety of the 30-day period, not the impact of missing a single Ramadan meal.

In a prior unpublished case, the Sixth Circuit addressed a prisoner's claim that
he missed meals during the Ramadan fast in 2014 and concluded that missing those
meals did not place a substantial burden on the exercise of his religion where the
prisoner did not feel compelled to modify his behavior and break his fast.  *Pleasant-
Bey v. Tennessee Dep't of Correction*, No. 18-5424, 2019 WL 11880267, at *4 (6th Cir.
Apr. 4, 2019).  In addressing the plaintiff's claim in that case, the Sixth Circuit noted:

> "When prison officials place substantial pressure on an adherent to
> modify his behavior and to violate his beliefs or effectively bar his
> sincere faith-based conduct, they necessarily place a substantial burden
> on it." *Haight*[*v. Thompson*], 763 F.3d [554] at 565 [(6th Cir. 2014)]
> (cleaned up). Although Pleasant-Bey claimed that he suffered fatigue
> and stomach cramps and that he "was deprived of the spiritual focus of
> the Ramadan experience," he did not allege that he felt compelled to
> modify his behavior and break his Ramadan fast as a result of the errors
> in the delivery of his meals. Moreover, the late delivery of his meals
> occurred during a prison lockdown. As the district court concluded, the
> undisputed evidence showed that the burden on Pleasant-Bey's religious
> exercise was not a substantial one. *See Colvin*[*v. Caruso*], 605 F.3d [282]
> at 293 [(6th Cir. 2010)] (holding that isolated incidents in which a
> prisoner was mistakenly served non-kosher food were insufficient to
> sustain First Amendment claim).

*Id*.

Several courts have echoed that conclusion in the context of determining
whether a complaint states a First Amendment free exercise claim.  *See, e.g.*, *Randall*

12

*v. McLeod*, No. 95-10106, 1995 WL 581973, at *4 (5th Cir. Sept. 15, 1995) (where the plaintiff was denied two pork-free meals on two occasions, but not on the same day, the court concluded that the plaintiff had failed to allege that "prison officials . . . burdened his right to freely exercise his religious beliefs"); *Manning v. Erdos*, No. 1:22-cv-371, 2022 WL 10118036, at *6 (S.D. Ohio, Oct. 17, 2022) (where the plaintiff alleged he had missed both Ramadan meals on April 2, 2022, the court concluded that "[p]laintiff's allegations fail to rise to the level of a substantial burden under the First Amendment"); *Cisse v. Annucci*, No. 9:22-CV-0156 (TJM/AJB), 2022 WL 1183274, at *5 (N.D.N.Y. Apr. 21, 2022) (noting that "[t]he complaint in this case fails to describe how missing two meals during Ramadan affected any central tenet of plaintiff's religion or that it otherwise substantially burdened his ability to practice his religion or continue fasting during Ramadan"); *Washington v. Afify*, 968 F. Supp. 2d 532, 538 (W.D.N.Y. 2013) (dismissing First Amendment claim based on denial of three meals during Ramadan as "a *de minimis* burden on plaintiff's exercise of his religion"; noting that "[c]ourts have generally held that incidents that are isolated, or few in number, involving a denial of religiously-mandated food, do not give rise to a First Amendment claim") (collecting cases); *Baskin v. Murphy*, No. 1:04-CV-324. 2007 WL 1192313, at *4 (E.D. Tex. Apr. 23, 2007) (where the plaintiff was denied the ability to attend one meal during Ramadan the court concluded that "[t]he intrusion upon plaintiff's religious practice involved in this action was short-term and sporadic, and did not constitute a substantial interference"); *Omar v. Casterline*, 414 F.Supp.2d 582, 593 (W.D. La. 2006) (finding "that the refusal to hold three meals because of

13

Ramadan states only a *de minimis* imposition on [the plaintiff's] free exercise rights"
and dismissing the claim).

Plaintiff's allegations against Defendants Klinger and Hellman relate only to
the denial of one evening meal bag.  Such an isolated incident does not rise to the
level of a substantial burden.  Accordingly, Plaintiff has failed to state a claim against
Defendants Klinger and Hellman for violation of his First Amendment free exercise
rights or his rights under RLUIPA.

Moreover, numerous courts have recognized that negligent interference with a
prisoner's religious diet by prison officials does not violate the constitution.  *See
Colvin v. Caruso,* 605 F.3d 282, 293-94 (6th Cir. 2010) (holding that isolated incidents
of negligence by prison officials in implementing kosher food requirements is not
actionable under the First Amendment); *Gallagher v. Shelton*, 587 F.3d 1063, 1069
(10th Cir. 2009) (isolated acts of negligence in providing kosher diet do not support a
free-exercise claim); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff]
must assert conscious or intentional interference with his free exercise rights to state
a valid claim under § 1983."  (citing *Daniels v. Williams*, 474 U.S. 327, 330 (1986))).

This is also true for claims under RLUIPA.  *Colvin v. Horton*, No. 2:19-CV-122,
2019 WL 3927425, at *6 (W.D. Mich. Aug. 20, 2019) (citing *Garrison v. Dutcher*, No.
1:07-cv-642, 2008 WL 4534098, at *6 (W.D. Mich. Sept. 30, 2008) (concluding that the
RLUIPA requires a state of mind higher than negligence); *Fisherman v. Schaefer*, No.
17-cv-3766, 2019 WL 1086390, at *4 (D. Minn. Jan. 17, 2019) (holding that negligent
conduct is not actionable under RLUIPA); *Guillory v. Ellis*, No. 9:11-cv-600, 2014 WL

4365274, at *9 n.10 (N.D.N.Y. Aug. 29, 2014) (same); *Nelson v. Jackson*, No. 2:12-cv1167, 2014 WL 197877, at *13 (S.D. Ohio Jan. 15, 2014) (same); *Carter v. Washington Dep't of Corr.*, No. C11-5626, 2013 WL 1090753, at *14 (W.D. Wash. Feb. 27, 2013) (same)).

The allegations set forth by Plaintiff do not support a finding that the denial of his evening meal on March 26, 2023, was intentional. Plaintiff alleges that Defendants Klinger and Hellman told Plaintiff that they were not aware that he was on the Ramadan list. Moreover, both Klinger and Hellman apologized to Plaintiff. At most, the facts alleged by Plaintiff support an inference that Defendants Klinger and Hellman should have known that Plaintiff was on the Ramadan list and, therefore, should have provided his evening meal bag on March 26. A "should-have-known framework," suggests a "classic negligence formulation." *Doe v. Jackson Loc. Sch. Dist. Bd. of Ed.*, 954 F.3d 925, 932 (6th Cir. 2020). As explained above, alleging facts that support nothing more than negligence is not enough to establish either a First Amendment free exercise or a RLUIPA claim. Accordingly, even if missing a single meal were a substantial burden, Plaintiff's claims against Klinger and Hellman would be properly dismissed.

### b.   Defendant Wall

Plaintiff's free exercise and RLUIPA claims against Defendant Wall relating to the March 26 evening meal bag also fail, but they fail for a different reason. Plaintiff does not allege that Wall was involved with the initial failure to provide the March 26 evening meal bag. The amended complaint indicates that Wall became involved the next day after Plaintiff held his food slot hostage to ensure he received

15

the proper morning and evening bags that day.  (Am. Compl., ECF No. 7, PageID.69.)

Plaintiff contends that Wall is liable anyway because Wall failed to "mak[e] sure that

the meals [were] passed out to all who [were] suppose[d] to receive them."  (*Id.*,

PageID.71.)  Essentially, Plaintiff contends that Wall is responsible because he is

Klinger's and Hellman's superior and, thus, Wall is liable for their failure to provide

the evening meal bag.

Contrary to Plaintiff's contention, government officials may not be held liable

for the unconstitutional conduct of their subordinates under a theory of respondeat

superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't

of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir.

2009).  A claimed constitutional violation must be based upon active unconstitutional

behavior.  *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*,

310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor

can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at

576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A]

plaintiff must plead that each Government-official defendant, through the official's

own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendant Wall engaged in any active

unconstitutional behavior.  Accordingly, Plaintiff has failed to state a free exercise or

RLUIPA claim against Defendant Wall relating to the March 26 evening meal bag.

### 2. March 29, 2023, Denial of Evening Meal Bag

#### a. Defendants Crace and Spencer

Plaintiff alleges that he was again denied his evening meal on March 29, 2023, and had to wait until 4:05 a.m. on March 30, 2023, for a meal. Plaintiff asserts Defendants Crace and Spencer failed to give him his evening meal when two other inmates who were doing Ramadan received their evening meals even though Plaintiff's name was on the list. Plaintiff states that he had hit his call button to inform the Defendants but received no reply. (Am. Compl., ECF No. 7, PageID.69–70.)

Defendants Crace and Spencer are in the same position with regard to the March 29 evening meal bag that Defendants Klinger and Hellman were in with regard to the March 26 evening meal bag. Defendants Crace and Spencer, at most, denied Plaintiff one meal. That does not constitute a substantial burden; thus, Plaintiff has failed to state a free exercise or RLUIPA claim against Defendants Crace or Spencer. Alternatively and additionally, the facts alleged by Plaintiff do not support an inference that Defendants Crace or Spencer acted intentionally with regard to the March 29 evening meal bag. It may be that these Defendants were negligent, but that is not sufficient to state a free exercise or a RLUIPA claim.

#### b. Defendant Wall

Moreover, Plaintiff fails to allege any active involvement by Defendant Wall with regard to the March 29 evening meal bag. Based on Plaintiff's allegations, it appears that Wall played no role in the events until the next day. Plaintiff states that on March 30, 2023, he was again forced to take his food slot hostage in order to

17

be allowed to speak to the shift command.  Only then did Plaintiff speak to Defendant Wall.  Wall again apologized and told Plaintiff that steps had been taken to ensure that it did not happen again.  Plaintiff states that after he spoke to Defendant Wall, Defendants Spencer and Crace apologized for the oversight and told him that they had posted flyers in the control bubble and outside the Pod door instructing staff to make sure that Plaintiff received his Ramadan meal.  (Am. Compl., ECF No. 7, PageID.70.)

Because Plaintiff fails to allege facts showing that the intentional actions of Defendants Crace, Spencer, and Wall on March 29 and 30 of 2023 constituted a substantial burden on his ability to exercise his religion, the Court will dismiss Plaintiff's First Amendment and RLUIPA claims based on this conduct.

### 3.   October 15, 2023, Denial of Make-up Ramadan Fast

Plaintiff alleges that he missed the first day and one-half of the Ramadan fast, his religious practice requires him to complete the 30-day fast by making up the missed days, and the deadline to complete the "make up" fast was October 15, 2023. (*Id.*)  Plaintiff arranged to complete his make-up fast by the deadline.  But when the fast was supposed to begin, Defendants Stephenson and Smith refused to allow Plaintiff to do a make-up Ramadan fast because they did not want to deal with the "hassle."  (*Id.*)  Because of Defendants' decision, for Plaintiff to satisfy his Ramadan fast obligation, he would have missed as many as six consecutive regular meals or four Ramadan meals. Either way, he would have gone without food for two days.

The decision of Defendants Stephenson and Smith was plainly intended to stop Plaintiff from participating in the make-up Ramadan fast. Plaintiff could not eat

18

during the day when all of the normal meals were served and comply with the requirements of Ramadan.  Essentially, Plaintiff was compelled to choose between his religion or food.  Although that choice does not constitute a substantial burden when only one meal is at stake, that choice is qualitatively different when two days of meals are at stake.  Such allegations, if true, could constitute a substantial burden on Plaintiff's ability to exercise his religion.  Therefore, Plaintiff's First Amendment claims against Defendants Stephenson and Smith may not be dismissed on initial review.

However, Plaintiff's RLUIPA claim against Defendants Stephenson and Smith is properly dismissed.  RLUIPA does not create a cause of action against an individual in that individual's personal capacity.  *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd*, *Sossamon v. Texas*, 563 U.S. 277 (2011); *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity.");[6] *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[7]  Therefore, Plaintiff's

_____

[6] The Supreme Court granted certiorari only on the question "Whether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009).

[7] In *Haight v. Thompson*, 763 F.3d 554 (6th Cir. 2014), the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize

19

RLUIPA claims for damages, declaratory, or injunctive relief against Stephenson or Smith in their respective personal capacities are properly dismissed.

RLUIPA also does not permit damages claims against prison officials in their official capacities.  A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity.  *See Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  In *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment.  *See also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA.").  Therefore, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA.

That leaves only a claim for declaratory or injunctive relief against Stephenson and Smith in their respective official capacities.  That type of claim is not barred by sovereign immunity.  *See Ex parte Young*, 209 U.S. 123, 159–60 (1908).  However, the *Ex parte Young* exception for declaratory and injunctive relief applies only to prospective relief.  *Green v. Mansour*, 474 U.S. 64, 68–73 (1985) (stating "[w]e have refused to extend the reasoning of *Young* . . . to claims for retrospective relief" and "the availability of prospective relief of the sort awarded in *Ex parte Young* gives life

such a damages claim. *Id*. at 567–69. The court stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

to the Supremacy Clause.  Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law"); *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008) (stating "[u]nder the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law"); *see also Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (holding that in the absence of a real and immediate threat that the action will occur in the future, a plaintiff is not entitled to declaratory relief).

Plaintiff specifically states that he does not wish to receive damages for his RLUIPA claim; but he fails to identify any other type of relief he seeks.  He does not expressly assert claims for declaratory or injunctive relief, merely stating that in addition to seeking damages, he would like "such additional relief as the Court may deem just and proper."  (ECF No. 7, PageID.74.)

Even if Plaintiff were to seek leave to amend his complaint to state that he seeks declaratory or injunctive relief, his RLUIPA claim would still be properly dismissed because his complaint seeks relief only for past behavior.  There is nothing prospective about Plaintiff's complaint.  Indeed, because Plaintiff is no longer housed in the MCJ or subject to the authority of Stephenson or Smith, there is no prospective relief that might remedy the wrongs he alleges.

Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again.  *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief);

21

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).   A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102; *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

In the present action, Plaintiff does not allege the existence of an official policy or practice, or suggest that the activities alleged in the complaint are likely to occur again.   Plaintiff's allegations against Defendants Stephenson and Smith relate solely to past harm, not future risk of harm.   Therefore, Plaintiff does not seek relief properly characterized as prospective.  *See Ladd*, 971 F.3d at 581.

Moreover, Plaintiff is no longer incarcerated at the MCJ where the allegedly wrongful conduct occurred.   He is presently incarcerated with the MDOC and not subject to the decision-making authority of Defendant Stephenson or Defendant Smith.   The Sixth Circuit has held that transfer to another correctional facility moots a prisoner's injunctive and declaratory claims.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained); *Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991).

Because Plaintiff's allegations do not support a claim for prospective declaratory or injunctive relief—the only relief available under RLUIPA—he has failed to state a RLUIPA claim upon which relief may be granted.   Accordingly,

Plaintiff's RLUIPA claim against Defendants Stephenson and Smith will be dismissed.

### B.    Equal Protection

Plaintiff claims that Defendants Klinger, Hellman, Wall, Crace, and Spencer violated his Fourteenth Amendment right to equal protection when other similarly situated prisoners were provided with their Ramadan meals while he was denied meals.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff has alleged that he was treated differently than two other inmates observing Ramadan.  Although Plaintiff's allegations might support an inference that the other inmates were similarly situated,[8] the facts alleged cannot support an inference that the differential treatment was intentional.  As noted above Plaintiff's allegations, construed liberally, at most support a claim that Defendants

---

[8] Arguably, Plaintiff's allegations also support the inference that he was not similarly situated in that he started the Ramadan fast late. For purposes of this analysis, however, the Court will proceed as if Plaintiff's allegations show disparate treatment of similarly situated prisoners.

should have known that Plaintiff should be served his evening Ramadan meal bag on March 26 and 29.  By relying on what Defendants "should have known," Plaintiff is describing a negligent act, not an intentional one.  *See supra* Section II.A.1. Allegations of negligence do not suffice to show discriminatory intent.  *See, e.g.*, *Charles v. Baesler*, 910 F.2d 1349, 1357 (6th Cir. 1990) (affirming dismissal of an equal protection claim where the defendants actions could only be characterized as negligence, stating "[s]uch negligence is a far cry . . . from intentional invidious discrimination" (citing *Beck v. Washington*, 369 U.S. 541, 554–55 (1962) and *Snowden v. Hughes*, 321 U.S. 1, 7–9 (1944))); *Foster v. Mich.*, 573 F. App'x 377, 394 (6th Cir. 2014) (explaining that a purportedly discriminatory adverse action could not support a discrimination claim under § 1983 because "the allegation appears to be less of a claim of intentional discrimination and more of a claim sounding in negligence"). Plaintiff does not specifically allege that the discrimination was purposeful or intentional, and the facts he has alleged do not support such an inference.  Because Plaintiff's allegations do not support a finding of intentional discrimination, the Court concludes that Plaintiff has failed to state an equal protection claim against Defendants Klinger, Hellman, Wall, Crace, and Spencer.

### C.    Potential State Law Claims

As noted above, although Plaintiff has not alleged facts that support an inference that Defendants Klinger, Hellman, Wall, Crace, and Spencer acted intentionally, the facts do support an inference that those Defendants acted negligently.  Although negligent actions do not support a claim under § 1983 or RLUIPA, such actions could support a state law negligence claim.

To the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *See Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims.") (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).   In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, Plaintiff's federal claims against Defendants Klinger, Hellman, Wall, Crace, and Spencer will be dismissed, and the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.   Accordingly,

Plaintiff's potential state-law negligence claims against Defendants Klinger, Hellman, Wall, Crace, and Spencer will be dismissed without prejudice.

## **Conclusion**

Having conducted the review required by the PLRA, the Court determines that Defendants Klinger, Hellman, Wall, Crace, and Spencer will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) with regard to Plaintiff's federal claims, and because the Court declines to exercise supplemental jurisdiction with regard to Plaintiff's potential state law claims.  The Court will also dismiss Plaintiff's RLUIPA claims against Defendants Stephenson and Smith for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Plaintiff's First Amendment free exercise claim against Defendants Stephenson and Smith remains in the case.

An order consistent with this opinion will be entered.


Dated:  May 2, 2024                              /s/ Phillip J. Green
                                                 PHILLIP J. GREEN
                                                 United States Magistrate Judge

26